UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
IN RE:                                              :
                                                    :
HOTI ENTERPRISES, L.P. and HOTI                     :
REALTY MANAGEMENT CO., INC.,                         :
                   Debtors.                          :
-------------------------------------------------------- :
HOTI ENTERPRISES, L.P. and HOTI                     :        **MEMORANDUM DECISION**
REALTY MANAGEMENT CO., INC.,                         :
                   Appellants,                       :        12 CV 8030 (VB)
                                                    :        12 CV 8757 (VB)
v.                                                   :        12 CV 8758 (VB)
                                                    :        12 CV 8759 (VB)
GECMC 2007 C-1 BURNETT STREET, LLC,                  :        13 CV 0235 (VB)
                   Appellee.                          :
--------------------------------------------------------x

Briccetti, J.:

      Debtor-appellants Hoti Enterprises, LP and Hoti Realty Management Co., Inc., appeal

from the bankruptcy court's Order Confirming the Third Modified Chapter 11 Plan of

Reorganization For Hoti Enterprises, LP and Hoti Realty Management Co., Inc., dated June 19,

2012, ("Confirmation Order") (Doc. #240),[1] and subsequent Order Denying Motion for

Reconsideration of Order Confirming Plan of Reorganization, Or In the Alternative, For A Stay

Pending Appeal, dated July 16, 2012 ("Reconsideration Order") (Doc. #276).  Debtors also

appeal from four subsequent bankruptcy court orders sanctioning the debtor and its principals for

violating the terms of the Confirmation Order (the "Contempt Orders").[2]

---

     [1]   Unless otherwise noted, references to (Doc. #__) refer to the bankruptcy court docket in
case 10-24129.

     [2]   The orders appealed from include the Order Granting Motion of GECMC 2007 C-1
Burnett Street, LLC for Entry of an Order (I) Compelling the Debtors and Related Persons and
Agents to Comply with the Chapter 11 Plan and Confirmation Order, (II) Directing the
Withdrawal of state court Preliminary Injunction Proceeding, (III) Finding the Debtors and
Certain Related Persons in Contempt of Court, and (IV) Imposing Sanctions, dated August 10,
2012, (Doc. #302) (the "August 10 Contempt Order"); the Order Granting, In Part, Motion of

This decision addresses all of these appeals including motions to dismiss the Contempt Orders by GECMC 2007 C-1 Burnett Street, LLC ("GECMC").  For the following reasons, the Confirmation Order and Reconsideration Order are AFFIRMED.  GECMC's motions to dismiss the August 10 Contempt Order, September 14 Contempt Order, and Chapter 11 Trustee Order are GRANTED.  The motion to dismiss the December 5 Contempt Order is GRANTED in part and DENIED in part.  Upon consideration of the merits of the December 5 Contempt Order, the Court AFFIRMS the decision of the bankruptcy court.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 158(a) and Federal Rule of Bankruptcy Procedure 8001.

## BACKGROUND

Debtor-appellants were the owners of a residential apartment complex known as 2801 Fillmore Avenue, 3001 Avenue R, and 2719 Fillmore Avenue, Brooklyn, New York (the "Property").  (Doc. #8-1).  When debtors filed voluntary petitions for relief under Chapter 11 of Title 11 the United States Code, appellee GECMC asserted a claim in excess of $40 million.  The claim was based on a $31,000,000 loan evidenced by a note and secured by a mortgage and an assignment of leases and rents encumbering the Property, all dated February 15, 2007 (the "loan documents").  (Id.).  Debtors contested the validity of the claim, arguing GECMC never proved it obtained ownership of the loan documents.  Overruling debtors' objections, the

---

GECMC 2007 C-1 Burnett Street, LLC for Entry of an Order (I) Compelling the Debtors' New Counsel (Arnold E. DiJoseph, III) to Comply with the Chapter 11 Plan, Confirmation Order and the August 10, 2012 Order, (II) Finding Such New Counsel in Contempt of Court, and (III) Imposing Sanctions, dated September 14, 2012, (Doc. #325) (the "September 14 Contempt Order"); the Order Directing the United States Trustee to Appoint a Chapter 11 Trustee, dated September 14, 2012, (Doc. #327) (the "Chapter 11 Trustee Order"); and the Order Denying in Part and Granting in Part Emergency Motion of GECMC 2007 C-1 Burnett Street, LLC for Entry of an Order (I) Finding the Debtors and Victor Dedvukaj in Contempt of Court and (II) Directing the Immediate Incarceration of Victor Dedvukaj, dated December 5, 2012, (Doc. #366) (the "December 5 Contempt Order").

bankruptcy court approved a Chapter 11 plan requiring the debtors to turn over the Property to GECMC.  This appeal followed.

I.      Origin of the Loan Documents

On February 15, 2007, Hoti Enterprises, LP ("Hoti") and Deutsche Bank Mortgage Capital, L.L.C. ("Deutsche Bank") executed the loan documents.  (See Docs. #34.1 ¶ 15, 179.7, 179.8, and 179.12).  GECMC contends the loan documents were then assigned to U.S. Bank National Association, as successor to Wells Fargo Bank, N.A., as Trustee ("Wells Fargo"), for the Registered Holders of GE Commercial Mortgage Corporation, Commercial Mortgage Pass-Through Certificates, Series 2007-C1 (the "trust"), by assignments dated May 8, 2007.  GECMC further contends the loan documents were then assigned to GECMC on or about February 6, 2009.  (Doc. #8.1).

II.     The State Court Foreclosure Action

On November 1, 2008, nearly two years before the debtors petitioned for bankruptcy relief, GECMC alleges the debtors defaulted on the $31,000,000 loan.  On February 27, 2009, GECMC commenced a foreclosure action in New York Supreme Court, Kings County.  (Doc. #19).  By order dated March 16, 2009, the state court appointed a receiver to operate and manage the property.  (Id.).

III.    Bankruptcy Court Proceedings

On October 12, 2010, the debtors filed voluntary petitions for relief under Chapter 11. Immediately thereafter, GECMC moved for an order allowing the receiver to remain in possession and control of the property (Doc. #10), and for an order lifting the automatic stay so it could continue to pursue its foreclosure action.  (Doc. #24.1).  Debtors also moved for various

forms of relief including the ability to use the rents generated from the Property, i.e. the cash collateral.  (Doc. #34.1).

On December 22, 2010, the bankruptcy court entered an order approving a stipulation between the Debtors and GECMC authorizing the use of cash collateral during the chapter 11 proceeding and allowing the receiver to remain in possession and control of the property ("Cash Collateral Order").  (Doc. #43).  The Cash Collateral Order also provided a "90 day challenge period" during which the debtors could bring an adversary proceeding contesting the validity, enforceability, or priority of GECMC's claim.  (Id. ¶ 7).  If the debtors did not challenge the claim during the ninety day period, then upon expiration of the period, the debtors would be deemed to have "acknowledge[d] that [GECMC] holds a perfected valid first priority secured claim . . . which is not subject to defense, counterclaim or off-set."  (Id. ¶ 3).

Debtors did not challenge GECMC's claim during the ninety-day period set forth in the Cash Collateral Order.  (Doc. #212 at 10:4-10).[3]

IV.     Bankruptcy and State Court Foreclosure Proceedings Proceed Simultaneously

Debtors having not challenged the validity of GECMC's claim, on January 18, 2011, the bankruptcy court lifted the automatic stay to permit GECMC to proceed with the state court foreclosure proceedings.  (Doc. #61).  Thereafter, GECMC pursued both the state court foreclosure action and confirmation of a Chapter 11 plan in bankruptcy court that would provide

---

[3]     Debtors assert the Cash Collateral Order was "unusual" for several reasons.  The Court does not address these issues because as debtors acknowledge, the issue of whether the Cash Collateral Order was properly decided is not the subject of this appeal.  As explained further below, debtors moved for reconsideration of the Cash Collateral Order and that motion was denied.  Debtors appealed the order denying the motion for reconsideration.  That appeal has been decided and affirms the bankruptcy court's decision.  In re Hoti Enterprises, L.P., 2012 WL 6720378 (S.D.N.Y. Dec. 27, 2012).

for the transfer of the Property to GECMC.  (See Doc. #114, Chapter 11 Plan Submitted by GECMC, dated December 15, 2011).

        A.      <u>Debtors Request Relief from Cash Collateral Order</u>

On March 7, 2012, fourteen months after entry of the Cash Collateral Order, debtors moved for reconsideration of that order.  (Doc. #126).  The debtors requested the court "relieve them of the effect of the acknowledgements and waiver provisions of the Cash Collateral Stipulation," which took effect after the ninety-day period passed in January 2011, so that debtors could adjudicate the validity of GECMC's claim.  (Doc. #126.2 at ¶ 2).  The debtors' principal argument was that there were document forgeries and problems with the chain of title. (Doc. #126.2).

On March 29, 2012, GECMC responded to debtors' motion denying any fraud or wrongdoing and asserting the request was untimely and procedurally improper.  (Doc. #152.1 at pp. 2-3).

        B.      <u>State Court Dismisses Foreclosure Action</u>

Meanwhile, on April 4, 2012, the state court entered an order dismissing the foreclosure action.  The court held GECMC did not have standing to bring the foreclosure action because it was not authorized to do business in New York.  See <u>GECMC 2007-C1 Burnett St., LLC v. Hoti Enters., LP</u>, No. 5006/2009, slip op. at 2-3 (N.Y. Sup. Ct. Apr. 4, 2012).  GECMC moved for reconsideration.

C.      Bankruptcy Court Denies Motion for Reconsideration of Cash Collateral Order
        and Denies Debtors' Objections to GECMC's Chapter 11 Plan

Back in bankruptcy court, on April 26, 2012, to further rebut debtors' allegations of fraud

and forgery with respect to the loan documents, GECMC submitted "confirmatory documents"[4]

by German American Capital Corporation, as successor in interest to Deutsche Bank.  GECMC

argued these documents confirm that the loan documents were properly assigned by Deutsche

Bank to Wells Fargo effective in May 2007.  (Doc. #179.1).

On May 3, 2012, the bankruptcy court held a confirmation hearing on GECMC's

proposed Chapter 11 plan and also addressed debtors' motion for reconsideration of the Cash

Collateral Order.  (Doc. #212).  The bankruptcy court first denied debtors' motion for

reconsideration.  The court concluded that "GECMC's supplemental memorandum in which it

states and attaches exhibits supporting the statement that Deutsche Bank and [GECMC] have

corrected what the debtor contends was a defect in the chain of title render[ed] the dispute

moot."  (Id. at 16:1-6).  The court also concluded that the Cash Collateral Order was "a final

word that [was] not susceptible to reconsideration and vacature under Bankruptcy Rule 9024."

(Id. 18:21-24).  Because the Cash Collateral Order was valid and binding, and because no party

challenged GECMC's lien within the ninety-day period, the Court determined "GECMC in fact

is the holder of a secured claim, the note and the mortgage."  (Id. at 19:3-11).  On May 16, 2012,

the bankruptcy court entered an order denying debtors' motion and incorporating the May 3,

2012, bench ruling.  (See Doc. #210).

With respect to the Chapter 11 plan, the bankruptcy court considered and overruled each

of debtors' objections.  (See Doc. #212 at 63:7-12; 70:24-71:6).  The bankruptcy court then

---

    [4]    These documents included a Confirmatory Allonge, Confirmatory Assignment of
Mortgage, and Confirmatory Assignment of Leases and Rents, each dated April 23, 2012.
(Docs. #179.7, 179.8, and 179.9).

adjourned the hearing on confirmation of the plan to June 14, 2012, so GECMC could address certain issues raised by the Internal Revenue Service.  (Id. at 71:6-7).

        D.       State Court Denies GECMC's Motion for Reconsideration of Dismissal of Foreclosure Action

On June 13, 2012, the state court, by the Honorable Yvonne Lewis, J.S.C., denied GECMC's motion for reconsideration of the dismissal of the foreclosure action and adhered to its earlier dismissal order.  (Doc. # 246).  The holding of this decision lies at the heart of this dispute.

The state court made clear that "[t]he question squarely before this Court [was] whether GECMC ha[d] standing to maintain this lawsuit."  GECMC 2007-C1 Burnett St., LLC v. Hoti Enters., LP, Index No. 5006/2009, slip op. at 2 (N.Y. Sup. Ct. June 13, 2012).  Relying on U.S. Bank, N.A. v. Collymore, 68 A.D.3d 752 (2d Dep't 2009), the court explained that "[i]n a mortgage foreclosure action, a plaintiff has standing where it is both the holder or assignee of the subject mortgage and the holder or assignee of the underlying note at the time the action is commenced."  GECMC 2007-C1 Burnett St., LLC v. Hoti Enters., LP, at 2-3.  The burden rested with GECMC to "show/prove the chain of title in the assignments" of the loan documents.  Id. at 3.

The court considered GECMC's confirmatory documents and the bankruptcy court's May 3, 2012, ruling that GECMC's confirmatory documents rendered debtors' arguments concerning the chain of title moot.  The state court, however, determined that "the documents which GECMC labels confirmatory are not sufficient to establish title or a proper assignment from Deutsche Bank."  Id. at 4.  The court was not satisfied that the confirmatory allonge showed "the assignment itself was properly done and actually signed by the Director, Michelle Leighton," id., nor could GECMC "fix it by saying that 'as of April 23, 2012, the parties wish to

confirm the actual and legal transfer of the note from the assignor to the assignee.'"  Id. at 5.
Additionally, the court found an open question as to whether there was a missing link in the
chain of assignments.  Id.

The state court, therefore, concluded "GECMC was not the assignee of the Hoti
mortgage/note at the time the foreclosure proceeding was filed."  Id.

E.      Bankruptcy Court Confirms Chapter 11 Plan

The next day, on June 14, 2012, the bankruptcy court held a final confirmation hearing on
GECMC's proposed Chapter 11 plan.  In order to confirm GECMC's proposed plan, the
bankruptcy court needed to be satisfied that GECMC did, in fact, hold a valid and secured claim.
Thus, the court solicited arguments from both GECMC and the debtors as to whether Justice
Lewis's June 13, 2012, decision affected the confirmation of the Chapter 11 plan.  (Doc. #281 at
36:9-50:16).  The bankruptcy court concluded the state court decision did not prevent it from
confirming the Chapter 11 plan.  Accordingly, the bankruptcy court confirmed the plan and, on
June 19, 2012, entered the Confirmation Order.  (Doc. #243).

On June 29, 2012, pursuant to the plan and Confirmation Order, the Property was
transferred to GECMC.  (Altman Decl. ¶ 5).[5]  That same day, debtors filed a motion for
reconsideration of the Confirmation Order or in the alternative for a stay pending appeal.
(Doc. #251).  Debtors' argued the state court's June 13, 2012, order determined that GECMC's
interest in the Property was not properly perfected and that principles of comity and federalism
required the bankruptcy court to defer to that holding.  (Doc. #251).

---

[5]      Declaration of Steven Altman in Support of Appellee 2007 C-1 Burnett Street, LLC's
Brief in Opposition to Appeal (Doc. #10 on docket 12-cv-8030).

F.    Bankruptcy Court Denies Motion for Reconsideration of Confirmation Order

At a July 12, 2012, hearing, the bankruptcy court denied debtor's motion for reconsideration of the Confirmation Order.  (Doc. #334 at 17:22-24).

The bankruptcy court rejected GECMC's argument that the request for reconsideration was constitutionally and equitably moot because the plan had been substantially consummated. (Id. at 17:20-22).  The court agreed that the plan had been substantially consummated in that the primary asset of the debtor had been transferred on June 29, 2012, and that GECMC had paid most if not all of the payments required to be paid under the plan.  (Id. at 16:7-12).  The court further recognized the "strong presumption that an appeal of an unstayed order is moot."  (Id. at 16:2-4 (citing In re: Shadow Gay Corp., 988 F.2d 322, 325 (2d Cir. 1993)).  Nonetheless, the court concluded that the confirmation order was not equitably or constitutionally moot "given the relative ease with which the substantial conservation of the plan could be undone."  (Id. at 17:12-15).  The court explained that this was true "because this has always been a case with very few real parties in interest beyond the professionals and focused almost exclusively on the disputes between GECMC on the one hand and the debtor on the other."  (Id. at 17:15-19).

Turning to the merits of the motion, the bankruptcy court determined that the only basis for considering debtors' motion brought pursuant to Bankruptcy Rule 9023 and Federal Rule of Civil Procedure 59 was that the court made a clear error or that modification was needed to prevent manifest injustice.  (Id. at 18:23-19:1).

The court re-examined the state court's June 13, 2012, decision and concluded the bankruptcy court made no clear error. (Id. at 25:2-6).  First, the bankruptcy court reasoned that the legal issue before the state court differed from that before the bankruptcy court.  Therefore, the state court's June 13, 2012, decision did not conflict with the bankruptcy court's conclusion reached on May 3, 2012, that GECMC had an allowed secured claim.  Specifically, the

9

bankruptcy court explained that whereas the issue before the state court was whether "at the time of the commencement of the foreclosure proceeding in 2009 GECMC had standing to seek foreclosure," the issue before the bankruptcy court was whether "at the time of the confirmation of the plan [] GECMC owned a secured claim against the debtor." (Id. at 22:1-7) (emphasis added).

Since the filing of the foreclosure action in 2009, two things had happened: (1) the bankruptcy court entered the Cash Collateral Order, and (2) GECMC filed confirmatory documents. The bankruptcy court's May 3, 2012, determination that GECMC had a valid, secured claim was based in part on both of those things. The bankruptcy court noted the state court did not address the Cash Collateral Order. The bankruptcy court reasoned that that omission supported its view that each court was addressing a different issue because the state court would only have needed to address the Cash Collateral Order if it was making a ruling as to GECMC's ownership for a time period after the commencement of the foreclosure proceedings. (Id. at 22:11-16).

In other words, the bankruptcy court read the state court decision as limited to whether GECMC demonstrated ownership of the note and mortgage (i.e., had standing) at a particular period in time; namely, at the commencement of the foreclosure action in 2009. The bankruptcy court concluded that a determination by the state court that GECMC did not adequately demonstrate ownership in 2009, however, did not conflict with determinations by the bankruptcy court that GECMC later demonstrated ownership (i.e., because debtors waived the issue by not challenging GECMC's claim during the ninety-day period or because the confirmatory documents established GECMC's ownership).

Additionally, the bankruptcy court determined, for purposes of confirmation of the plan, that the Cash Collateral Order was final and binding for res judicata purposes.  (Id. at 22:20-23:9 (citing Arizona v. California, 530 U.S. 392, 405 (2000), for the proposition that the Cash Collateral Order fell within an exception to the rule that issue preclusion does not lie with respect to a stipulation or agreed order because the Cash Collateral Order "specifically contemplated barring litigation" on the validity of GECMC's secured claim)).

The bankruptcy court rejected debtors' argument that the Cash Collateral Order was procured by fraud, particularly because (1) debtors' "representatives were present in court when the cash collateral stipulation was approved and did not oppose its entry" (id. at 24:1-3), and (2) debtors did not seek to vacate the order for over two years even though all the arguments they raised were "available to them and in fact considered by them at the time the [C]ash [C]ollateral [O]rder was entered into as well as 90 days later when the investigation period expired and the stipulation with regard to the validity of GECMC's claim became binding."  (Id. at 24:4-11).

Finally, the bankruptcy court declined to issue a stay pending appeal in light of its determination that (1) the matter was not moot, the reasons for which also supported a finding that debtors would not suffer irreparable harm, and (2) there was not a substantial possibility of success on appeal.  (Id. at 26:4-14).

V.    Debtors Appeal Order Denying Motion to Reconsider Cash Collateral Order

As previously stated, in addition to appealing the bankruptcy court's Confirmation Order and Reconsideration Order, debtors also appealed the order denying debtors motion for reconsideration of the Cash Collateral Order.  That appeal was heard and decided by the Honorable Cathy Seibel.  Judge Seibel determined that the bankruptcy court did not abuse its

discretion in denying debtors' motion.  In re Hoti Enterprises, L.P., 2012 WL 6720378, at *4 (S.D.N.Y. Dec. 27, 2012).  Accordingly, the Cash Collateral Order is law of the case.

VI.       Debtors Appeal the Confirmation Order and the Reconsideration Order

On July 27, 2012, debtors filed a notice of appeal of the Confirmation Order and the Reconsideration Order.  Debtors did not seek a stay of the Confirmation Order from this Court.

VII.      Contempt Orders

After entry of the Confirmation Order, the bankruptcy court sanctioned debtors and Victor Dedvukaj, a 10% limited partner of Hoti Enterprises and president of Hoti Management, for engaging in conduct that violated the Confirmation Order.

A.       August 10 Contempt Order (Doc. #302) (Subject of Civil Action 12-cv-8759)

The Confirmation Order, among other things, provided for the transfer of the Property to GECMC and the recording of the deed.  (See Doc. #240 ¶ 8).  In fact, paragraph 8 required the debtors to "take any and all actions necessary or requested by GECMC to effectuate" that transfer.  (Id.).  Paragraph 22, labeled "Injunction," also provided, in relevant part, that "[u]pon entry of this Confirmation Order . . . the Debtors, and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with GECMC's . . . implementation or consummation of the Plan."  (Id. at ¶ 22) (emphasis added).

However, on July 13, 2012, the day after the bankruptcy court denied the motion for reconsideration of the Confirmation Order, the debtors filed with the state court an ex parte application for a temporary restraining order ("TRO") to enjoin the New York City Office of the City Register from recording the deed to the Property.  Mr. Dedvukaj submitted an affidavit in support of the application.  (Doc. #288, Ex. C).  The state court issued the TRO on July 13, 2012, and prohibited the City Register from recording the deed transferring ownership of the Property

12

"until the final resolution of the issue of plaintiff's standing by the United States Court of Appeals for the Second Circuit of New York on ultimate appeal of the United States bankruptcy court's June 19, 2012 Order, and any order of the United States District Court for the Southern District of New York upholding same."  (Id. at Ex. C).

In response, GECMC moved the bankruptcy court to compel the debtors to comply with the Chapter 11 plan and Confirmation Order and to impose sanctions.  At a hearing on the motion on August 9, 2012, the bankruptcy court found the Confirmation Order was clear and unambiguous in requiring debtors to effectuate the transfer of the Property (Doc. #335 at 30:11-19), and the proof of non-compliance was clear and convincing:  "Nothing would constitute a greater interference with the implementation or consummation of the plan than obtaining an order prohibiting the recordation of the transfer of the property which was the whole purpose of the plan as had been litigated in several years before this Court."  (Id. at 26:5-9).  Finally, the court found debtors were not diligent in attempting to comply with the Confirmation Order.

Accordingly, the bankruptcy court granted the motion and found both the debtors and Mr. Dedvukaj were in contempt for "violating the Confirmation Order by directing the filing and prosecution of the TRO and preliminary injunction proceeding in state court."  (Doc. #302).  The court further ordered debtors and their counsel to take action to have the TRO vacated, and to cease prosecution and withdraw the application for a preliminary injunction.  (Id. ¶¶ 3-4).  Finally, debtors and Mr. Dedvukaj were sanctioned and ordered to pay all costs and expenses, including attorneys' fees, incurred by GECMC in connection with defending against the TRO proceedings in state court.  (Id. ¶ 5).

B.    <u>September 14 Contempt Order (Doc. #325) (Subject of Civil Action 12-cv-8758)</u>
<u>and Chapter 11 Trustee Order (Doc. #327) (Subject of Civil Actions 12-cv-8757)</u>

Following the entry of the August 10 Contempt Order, debtors' counsel in the state court proceedings complied with the bankruptcy court's order and moved by order to show cause to dismiss the injunction proceeding.  (Doc. #337 at 39:21-23).  However, the debtors, through Mr. Dedvukaj, fired that counsel and hired new counsel, Arnold DiJoseph, Esq.  Mr. Dedvukaj then filed an affidavit in reply to GECMC's opposition to the request for a preliminary injunction. (<u>Id</u>. at 39:23-40:6).  The hearing on the motion for a preliminary injunction was adjourned from September 6 to September 14, 2012, and consolidated with the request by debtors' prior counsel to dismiss the action.  (<u>Id</u>. at 40:6-10).

GECMC again moved for sanctions in the bankruptcy court.

At a hearing on September 13, 2012, the bankruptcy court adhered to its initial conclusion that action taken in furtherance of the state court TRO and preliminary injunction proceedings violated the Confirmation Order and enjoined Mr. DiJoseph and any potential further counsel for the debtors from seeking such relief.  (<u>Id</u>. at 45:24-46:7).  The court further found that Mr. Dedvukaj continued to be in contempt of the bankruptcy court's orders. Nonetheless, the court declined to incarcerate him because the court believed that "incarceration would merely punish him and not result in what is required here in an order of civil contempt, which is a purging of the contempt."  (<u>Id</u>. at 47:18-21).

Finally, the court found the circumstances warranted the appointment of a trustee under Section 114(a) of the Bankruptcy Code based on both (1) "dishonesty by debtor's management" including the taking of security deposits and failure to return the same (<u>Id</u>. at 49:4-6), and (2) the "clear and willful contempt of the Court's orders."  (<u>Id</u>. at 49:7-8).  Accordingly, the court directed the appointment of a trustee.  (<u>Id</u>. at 50:13-17).

14

Thereafter, the bankruptcy court entered the September 14 Contempt Order, which, in relevant part, enjoins counsel for the debtors from taking further action in the state court TRO proceedings (Doc. #325), and the Chapter 11 Trustee Order, which, in relevant part, directs the United States Trustee for the Southern District of New York to appoint a chapter 11 trustee and provides that the debtors' "directors, officers, managers, principals, members, and equity holders, including, without limitation, Victor Dedvukaj, shall have no authority or right to take any action" on behalf of the debtors.  (Doc. #327).

      C.      <u>December 5 Contempt Order (Doc. # 366) (Subject of Civil Action 13-cv-235)</u>

Despite the state court's July 13, 2012 TRO, the Office of the City Register recorded the deed transferring the Property from debtors to GECMC.  (<u>See</u> Doc. #342, Ex. A, Affidavit of Victor Dedvukaj).

When this recording came to Mr. Dedvukaj's attention, he informed Justice Lewis by letter dated October 10, 2012, and notwithstanding the bankruptcy court's prior orders, on October 16, 2012, Mr. Dedvukaj sought and obtained another <u>ex parte</u> TRO from the state court enjoining GECMC from transferring the Property.  The application for the TRO was supported by affidavits signed by Mr. Dedvukaj.  (<u>See id</u>.).

A hearing was held in state court on the debtors' request for a preliminary injunction on November 6, the request was granted on November 7, and an amended order was entered on November 14, 2012.  (Doc. #357).  The state court's order expunged the recording of the deed by the City Register's Office, continued the TRO restraining GECMC from transferring ownership of the Property, and restrained the City Register's Office from transferring or recording a deed of transfer.  (<u>Id</u>.).

Thereafter, on a motion made by GECMC, the bankruptcy court entered the December 5 Contempt Order that, among other things, held debtors and Mr. Dedvukaj in contempt for

violating the bankruptcy court's orders including the Confirmation Order, the August 10

Contempt Order, the September 14 Contempt Order, and the Chapter 11 Trustee Order.  (Doc.

#366).  Debtors and Mr. Dedvukaj were sanctioned and ordered:

> to pay all actual damages, including reasonable costs, expenses,
> and attorneys' fees, incurred [through that date] and to be incurred
> in the future by GECMC in connection with the July 13 TRO, the
> October 16 TRO, the order entered by the state court on November
> 7, 2012 (as amended), and any and all related injunctive
> proceedings in state court, appellate court proceedings and
> proceedings in this Court to enforce the Court's prior orders or
> seek relief based on the Debtors and Victor Dedvukaj's contempt
> of Court . . . provided, that, as stated by the Court on the record of
> the Hearing, the Debtors are not prohibited from defending any
> appeals by GECMC, its successors and assigns of any of the state
> court's injunctions or the November 7, 2012 order, as amended.

(Doc. #366 ¶ 3).

## DISCUSSION

The Federal Rules of Bankruptcy Procedure provide that a district court "may affirm,

modify, or reverse a bankruptcy judge's judgment, order, or decree."  Fed. R. Bankr. P. 8013; In

re Loews Cineplex Entm't Corp., 2004 WL 875819, at *2 (S.D.N.Y. 2004).   The Court reviews

a bankruptcy court's conclusions of law de novo and its findings of fact under a clearly

erroneous standard.  Id.  The standard of review for the denial of a motion for reconsideration is

abuse of discretion.  Bank of Am. Nat. Ass'n v. AIG Fin. Prods. Corp., 2013 WL 1352520, at *3

(2d Cir. Apr. 5, 2013) (citing Empresa Cubana del Tabaco v. Culbro Corp., 541 F.3d 476, 478

(2d Cir.2008)).

I.        Appeal of the Confirmation Order

     A.        Equitable Mootness

GECMC invokes the doctrine of equitable mootness arguing the "substantial

consummation of the Plan and the implementation of the various transactions in furtherance

thereof render" this appeal moot.  "Equitable mootness is a prudential doctrine that is invoked to avoid disturbing a reorganization plan once implemented."  Deutsche Bank AG v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.), 416 F.3d 136, 144 (2d Cir. 2005). "An appeal should . . . be dismissed as moot when, even though effective relief could conceivably be fashioned, implementation of that relief would be inequitable."  Official Comm. of Unsecured Creditors of LTV Aerospace and Def. Co. v. Official Comm. of Unsecured Creditors of LTV Steel Co. (In re Chateaugay Corp.), 988 F.2d 322, 325 (2d Cir. 1993). "Because equitable mootness bears only upon the proper remedy, and does not raise a threshold question of our power to rule, a court is not inhibited from considering the merits before considering equitable mootness."  In re Metromedia Fiber Network Inc., 416 F.3d at 144.

The Court has reviewed the bankruptcy court's Reconsideration Order and agrees the plan has been substantially consummated.  See (Doc. #334 at 16:7-12); see also 11 U.S.C. § 1101; In re Indu Craft Inc., 2012 WL 3070387, at *13 (S.D.N.Y. July 27, 2012) ("whether a plan has been substantially consummated is a factual finding that is reviewed on appeal for clear error").  Thus, a presumption of mootness applies, and the appeal "should be dismissed unless several enumerated requirements" as set forth in Frito-Lay, Inc. v. LTV Steel Co., Inc. (In re Chateaugay Corp.), 10 F.3d 944, 952-53 (2d Cir. 1993) ("Chateaugay Corp. II") are satisfied.  In re Metromedia Fiber Network Inc., 416 F.3d at 144.

Substantial consummation will not moot an appeal if the following five circumstances exist: (1) "the court can still order some effective relief," (2) "such relief will not affect the re-emergence of the debtor as a revitalized corporate entity," (3) "such relief will not unravel intricate transactions so as to knock the props out from under the authorization for every transaction that has taken place and create an unmanageable, uncontrollable situation for the

bankruptcy court," (4) "the parties who would be adversely affected by the modification have notice of the appeal and an opportunity to participate in the proceedings," and (5) the appellant pursued with diligence a stay of execution of the objectionable order.  See Chateaugay Corp. II, 10 F.3d at 952-53 (internal citations and quotations omitted).

"A chief consideration under Chateaugay II is whether the appellant sought a stay of confirmation.  If a stay was sought, we will provide relief if it is at all feasible'" unless it would create an unmanageable situation for the bankruptcy court.  In re Metromedia Fiber Network Inc., 416 F.3d at 144 (quoting Chateaugay II, 10 F.3d at 953).

The Court finds the question of whether this appeal is equitably moot is a close call, but concludes, under the facts and circumstances of this case, the appeal is not moot.  First, debtors sought a stay of the Confirmation Order before the bankruptcy court, but not in this Court.  The Court also agrees with GECMC that the second factor does not apply in these circumstances.

With respect to the remaining factors, the Court has reviewed the bankruptcy court's July 12, 2012, opinion on the record, and agrees with the court's conclusion that consummation of the plan could be undone.  See (Doc. #334 at 17).  Although nearly ten months have passed since the plan was confirmed and consummated, and GECMC has no doubt expended significant sums to preserve, protect and invest in the property, including entering into lease agreements with new tenants, (see Altman Decl.), as the bankruptcy court explained, this case involves few real parties in interest and essentially involves disputes between GECMC and the debtor.  The Court has some concerns as to whether tenants who have entered into new lease agreements at the Property have received notice of this appeal or have been provided an opportunity to participate; however, it is not clear how they would be adversely affected by a modification of the plan that returned ownership to the debtors.

Given the facts of this case, the Court concludes relief could conceivably be fashioned that would not "create an unmanageable, uncontrollable situation for the bankruptcy court." See Chateaugay Corp. II, 10 F.3d at 953. Accordingly, the Court finds debtors' appeal of the bankruptcy court's Confirmation Order and Reconsideration Order is not equitably moot.

B.     Res Judicata, Collateral Estoppel, and Rooker-Feldman

The sole basis upon which debtors challenge the entry of the Confirmation Order is the claim that the state court determined GECMC does not have a valid security interest in the Property that was turned over to it under the plan, and that determination was binding on the bankruptcy court. Thus, debtors argue the principles of res judicata, collateral estoppel, and the Rooker-Feldman doctrine[6] bind the bankruptcy court to the state court's finding that GECMC does not have a properly perfected security interest. The Court disagrees.

1.     Rooker-Feldman

The Rooker-Feldman doctrine has no applicability to this case. That doctrine applies in "cases brought by state-court losers complaining of injuries caused by state-court judgments before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005). Here, the federal bankruptcy action was brought by debtors, the "winners" of the state court proceedings, long before the state court judgment was obtained. Indeed, the state and federal actions proceeded as parallel actions. Id. at 292 ("When there is parallel state and federal litigation, Rooker–Feldman is not triggered simply by the entry of judgment in state court.").

---

[6]     The Rooker-Feldman doctrine is derived from two cases: Rooker v. Fid. Trust Co., 263 U.S. 413 (1923), and Dist. of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983).

2.      <u>Res Judicata and Collateral Estoppel</u>

The Court also finds that neither res judicata nor collateral estoppel precluded entry of the Confirmation Order.  These doctrines apply to prevent parties from relitigating claims or issues that have already been determined by a court of competent jurisdiction.  <u>See</u> <u>Burgos v. Hopkins</u>, 14 F.3d 787, 789 (2d Cir. 1994).  Res judicata provides that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."  <u>Id</u>. (quoting <u>Allen v. McCurry</u>, 449 U.S. 90, 94 (1980).  "Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case."  <u>Id</u>. (quoting <u>Allen v. McCurry</u>, 449 U.S. at 94).  Because the Court agrees with the bankruptcy court's reading of Justice Lewis's June 12, 2012, decision – namely, that the legal issue before each court was different (and, thus, any factual determinations made were different) – the state court decision did not have preclusive effect on the bankruptcy court under either doctrine.

The Court rejects debtors' alternative reading of the state court decision.  Under that reading, the state court made a broader finding that GECMC did not establish, even as of June 12, 2012, that it is the legitimate holder of the note and mortgage, and, therefore, by operation of logic, it did not establish its ownership as of the time it commenced the foreclosure lawsuit.  Although the Court understands how some of the language in the state court decision taken in isolation could support such a reading, in context, the statements made concerning GECMC's confirmatory documents appear to be focused on whether GECMC could use those documents to show that it owned the mortgage and note as of the commencement of the foreclosure action.

20

Additionally, under the reading proposed by debtors, the state court would necessarily have had to disavow both the Cash Collateral Order and the bankruptcy court's prior May 3, 2012, decision that the confirmatory documents mooted the chain of title issue brought before the bankruptcy court.  But the state court did not do that.  The state court decision does not mention the Cash Collateral Order.  And, although the state court considered Judge Drain's May 3 ruling, it examined the May 3 ruling in the context of whether GECMC could use that ruling to show GECMC had title as of the commencement of the foreclosure action.

> In its argument that it has title GECMC addresses Hoti's contention that the allonge signed by Michelle Leighton as Director of Wells Fargo was fraudulent by offering "confirmatory" documents issued by GACC, the successor in interest to Deutsche Bank as proof of its successful transfer and title.  GECMC also quotes the bankruptcy court's statement on May 3, 2012 that "I conclude that based upon GECMC's supplemental memorandum in which it states and attaches exhibits supporting the statement that Deutsche Bank and it has corrected what the debtor [Hoti] contends was a defect in the chain of title renders the dispute moot in any event," renders their obligation to show that they had title at the commencement of the Lawsuit and therefore standing moot.  This Court believes that the documents which GECMC labels confirmatory are not sufficient to establish title or a proper assignment from Deutsche Bank.

GECMC 2007-C1 Burnett St., LLC v. Hoti Enters., LP, No. 5006/2009, slip op. at 4.

The state court rejected GECMC's argument that the confirmatory documents could be used in the state court proceedings the same way the bankruptcy court used them in the bankruptcy proceedings.  Thus, the bankruptcy court's ruling as to the significance of the confirmatory documents had no bearing on the issue before the state court.  This Court understands the state court to have concluded that for purposes of deciding the issue before the state court – whether "they [GECMC] had title at the commencement of the Lawsuit" – the state court "believe[d] that the documents which GECMC label[ed] confirmatory [were] not sufficient to establish title or a proper assignment from Deutsche Bank."  Id.

21

In short, given the clear language qualifying the state court's holding to a finding that GECMC did not have standing "at the commencement of the action," which was expressed throughout the state court decision, and the lack of language expressly disavowing legal determinations made by the bankruptcy court, this Court agrees with the bankruptcy court that the state court decision has no preclusive effect on the bankruptcy court.

      3.    <u>Conclusion</u>

Because the state court's June 12, 2012, decision did not preclude the bankruptcy court from adhering to its prior rulings, both in the Cash Collateral Order, and at the hearing on May 3, 2012, that GECMC possessed a valid and secured claim, the Court concludes that confirmation of the Chapter 11 plan was appropriate and AFFIRMS the Confirmation Order.

II.    <u>Reconsideration Order</u>

The court has reviewed bankruptcy court's decisions and the record on appeal and for the reasons set forth above the Court finds the bankruptcy court did not abuse its discretion in denying debtors' motion for reconsideration. The Court agrees that the only ground that could have justified reconsideration in this case was the potential need to correct clear error or to prevent manifest justice. Because there was no clear error or manifest injustice, the motion was properly denied.

III.    <u>Contempt Orders</u>

The Contempt Orders appealed from were filed by Victor Dedvukaj, principal of the debtors. The notices of appeal initially appeared to be filed exclusively on behalf of debtors. Upon closer examination, the Court now understands the appeals to have been filed by Mr.

Dedvukaj on behalf of the debtors, himself, and in some cases individual general partners[7] of the debtors.

Appellants, through Mr. Dedvukaj, filed a brief in support of the appeal from the December 5 Contempt Order (13-cv-235).  No appeal briefs have been filed in support of the appeals from any of the other Contempt Orders – the August 10 Contempt Order (12-cv-8759), the September 14 Contempt Order (12-cv-8758), or the Chapter 11 Trustee Order (12-cv-8757).

GECMC, apparently interpreting these appeals to be brought solely on behalf of the debtors, as the Court did, moved to dismiss each appeal because Mr. Dedvukaj, a non-lawyer, may not represent the debtors.  GECMC also moved to dismiss the three appeals filed in 2012 for failure to timely file appeal briefs.

A.      Standing As To Debtors

In federal court, "parties may plead and conduct their own cases personally or by counsel."  28 U.S.C. § 1654.  "This provision authorizes only two types of representation: that by an attorney admitted to the practice of law by a governmental regulatory body and that by a person representing himself."  Berrios v. N.Y.C. Hous. Auth., 564 F.3d 130, 132 (2d Cir. 2009) (internal quotation marks omitted).  "Although § 1654 thus recognizes that an individual generally has the right to proceed pro se with respect to his own claims or claims against him personally, [t]he statute does not permit unlicensed laymen to represent anyone else other than themselves."  Id. (internal quotation marks omitted).

In addition to prohibiting an individual from representing another individual, § 1654 also prohibits an individual from representing corporations and partnerships.  See Jones v. Niagara

---

[7]    Appeals of the August 10 Contempt Order, September 14 Contempt Order, and Chapter 11 Trustee Order appear to have been filed on behalf of the following individuals: Violeta Dedvukaj, Marash Dedvukaj, Gjelosh Dedvukaj, and Maruka Dedvukaj.

23

Frontier Transp. Auth., 722 F.2d 20, 22 (2d Cir. 1983) ("The rule that a corporation may litigate

only through a duly licensed attorney is venerable and widespread."); Eagle Assocs. v. Bank of

Montreal, 926 F.2d 1305, 1310 (2d Cir. 1991) ("28 U.S.C. § 1654 prohibits a layperson from

appearing on behalf of a partnership.").  The reasons for requiring that a corporation appear

through an attorney

> are principally that the conduct of litigation by a nonlawyer creates
> unusual burdens not only for the party he represents but as well for
> his adversaries and the court.  The lay litigant frequently brings
> pleadings that are awkwardly drafted, motions that are
> inarticulately presented, [and] proceedings that are needlessly
> multiplicative.  In addition to lacking the professional skills of a
> lawyer, the lay litigant lacks many of the attorney's ethical
> responsibilities, e.g., to avoid litigating unfounded or vexatious
> claims.

Jones v. Niagara Frontier Trasnp. Auth., 722 F.2d at 22.

The Court agrees with GECMC that Hoti Enterprises, LP, is a partnership and Hoti

Realty Management Co., Inc., is a corporation, and therefore, Mr. Dedvukaj may not appear on

their behalf.  Neither may Mr. Dedvukaj appear on behalf of other individuals.

At a conference held on February 14, 2013, the Court informed Mr. Dedvukaj that he

needed to retain counsel by March 8, 2013, for the debtors to proceed with these appeals.  No

counsel appeared by March 8, 2013.  Indeed, no counsel has appeared for debtors as of the date

of this decision more than six weeks past that deadline.

Instead, on March 1, 2013, Mr. Dedvukaj filed an application in each appeal requesting

additional time to retain counsel, Arnold DiJoseph, Esq., because he needed an order from the

bankruptcy court authorizing the retention of counsel on behalf of the debtors.  Mr. Dedvukaj

represented that he had made an application to the bankruptcy court, but that his application

would not be heard until March 20, 2013.  GECMC opposed the application and noted, among

other things, that appellants only sought retention of counsel in three out of the four appeals

pending before this Court.

On March 20, 2013, the bankruptcy court denied debtors' application without prejudice

because Mr. DiJoseph's application did not comply with the disclosure requirements set forth in

Fed. R. Bankr. P. 2014(a).  (Doc. #395).

On April 8, 2013, Mr. Dedvukaj made a second request for additional time to retain

counsel to appear on behalf of debtors.  Mr. Dedvukaj represented that he made a renewed

application to the bankruptcy court for permission to retain Mr. DiJoseph; however, as of the

time of his submission, he had not been given a hearing date.  GECMC also opposed this

application.

Although the Court is mindful of the need to afford pro se litigants latitude in presenting

their claims, see Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per

curiam), and that "the right to appear pro se 'should not be impaired by harsh application of

technical rules,'" see Caidor v. Onondaga County, 517 F.3d 601, 605 (2d Cir. 2008) (quoting

Edwards v. INS, 59 F.3d 5, 8 (2d Cir. 1995)), Mr. Dedvukaj must still comply with jurisdictional

and procedural requirements.  See LoSacco v. City of Middletown, 71 F.3d 88, 92 (2d Cir. 1995)

(It is "especially true in civil litigation" that pro se litigants "are required to inform themselves

regarding procedural rules and to comply with them.").

Here, the Court informed Mr. Dedvukaj of the requirement that debtors be represented by

counsel at the February 14, 2013, hearing and gave him a firm deadline by which to do so.[8]  No

---

[8]    The Court notes that the February 14 hearing was not the first time Mr. Dedvukaj learned
of the need for debtors to be represented by counsel.  At a conference on a related appeal
concerning the Confirmation and Reconsideration Orders, at which Mr. Dedvukaj was present,
the Court expressed concern that there was no attorney of record on the appeals then pending on
the Sanction Orders.  See Transcript of Record, 12-cv-8030, at 43:21-25 (Jan. 3, 2013) ("There is

counsel has appeared for debtors and the Court finds no "excusable neglect" under Rule 6(b)(1)(B) would justify granting the requests for extensions.

First, the Court finds further delay will cause undue prejudice to GECMC.  The Court has concluded that the Confirmation and Reconsideration Orders were properly entered, and each of these appeals arises from orders sanctioning debtors for violating the Confirmation Order by impeding the transfer of the Property, which was the whole purpose of the plan.  Further delay on these appeals would continue to undermine enforcement of the Confirmation Order.

Second, the Court has thoroughly reviewed the record on appeal in each of these cases and the decisions of the bankruptcy court, and finds no error, clear or otherwise, by the bankruptcy court.  Thus, the appeals appear to be meritless.

Third, the Court finds Mr. Dedvukaj has not pursued the retention of counsel diligently, thereby causing unnecessary delay.  GECMC correctly notes that appellants, in their renewed application, have only asked the bankruptcy court to approve Mr. DiJoseph's retention in connection with three of the four appeals pending before this Court, despite GECMC's having pointed out this apparent oversight in response to Mr. Dedvukaj's initial request for additional time.  (See Doc. #396 at 12).  Thus, it is unclear whether debtors intend to retain counsel in connection with the appeal of the August 10 Contempt Order (12-cv-8759), the violations of which form part of the basis for each additional sanction order.

Even assuming the debtors intend to retain counsel for all of the Contempt Orders appeals, they have not diligently pursued their application in bankruptcy court.  At the March 20,

---

another problem, though, with the other appeals, which is they appear to have been filed pro se on behalf of the corporate entity and the partnership, which, as we all know, those entities cannot appear pro se.  They have to appear through a lawyer."); see also Transcript of Record, 13-cv-235, at 7:25-8:3 (Feb. 14, 2013) (Mr. Dedvukaj confirmed his presence at the January 3, 2013, conference).

2013, hearing on the first application, Judge Drain informed Mr. Dedvukaj that the court would promptly schedule another hearing if Mr. DiJoseph promptly filed his supplemental affidavit. (Doc. #16, Ex. B at 10:20-22, 13-cv-235).   However, Mr. DiJoseph did not promptly file a supplemental affidavit.  Debtors waited nearly three weeks to renew their request even though this Court's March 8, 2013, deadline had long since passed.  Further, the application was not made on an emergency or expedited basis.  The Court is informed that the hearing on that application is scheduled for June 6, nearly three months past the March 8 deadline.

Last, there is a significant question as to whether that application will be granted even though Mr. DiJoseph has now filed a supplemental affidavit.  At the March 20, 2013, hearing, Judge Drain expressed concern that Mr. DiJoseph could not meet the standard for retention under Section 327(a) of the Bankruptcy Code if he were to propose representing both debtors and Mr. Dedvukaj personally because that might create an adverse interest.  (Id. at 6-7).  The renewed application provides for just that dual representation.  (See Doc. #14, 13-cv-235, DiJoseph Aff. ¶ 2).

Accordingly, Mr. Dedvukaj's requests for additional time to retain counsel to appear on behalf of debtors are DENIED, and the appeals of the Contempt Orders are dismissed to the extent they are appealed on behalf of the debtors.  The appeals of the Contempt Orders are also dismissed to the extent they are appealed from on behalf of individuals other than Mr. Dedvukaj. Finally, because the time to appeal each of the Contempt Orders has passed, the dismissal as to debtors and individuals Violeta Dedvukaj, Marash Dedvukaj, Gjelosh Dedvukaj and Maruka Dedvukaj is with prejudice.

Although Mr. Dedvukaj may not represent the debtors, or other individual general partners, he can represent himself.  Thus, to the extent the Contempt Orders appealed from

27

concern sanctions against him individually, Mr. Dedvukaj may proceed.  Based on a review of

each of the Contempt Orders appealed from, the Court finds the following orders involve rulings

directed at Mr. Dedvukaj individually; the August 10 Contempt Order (12-cv-8759), the Chapter

11 Trustee Order (12-cv-8757), and the December 5 Contempt Order (13-cv-235).  The

September 14 Contempt Order (12-cv-8758) was not directed at Mr. Dedvukaj individually;

therefore, to the extent he purports to appeal that order on behalf of himself, that appeal is

dismissed with prejudice.

      B.     <u>Failure to Prosecute</u>

GECMC contends the appeals of the August 10 Contempt Order (12-cv-8759) and the

Chapter 11 Trustee Order (12-cv-8757) should also be dismissed because Mr. Dedvukaj failed

timely to file and serve briefs.  The Court agrees.

Bankruptcy Rule 8009(a) provides, in relevant part, that the "appellant shall serve and

file a brief within 14 days after entry of the appeal on the docket" unless otherwise ordered by

the district court.  Failure to timely file a brief is grounds for dismissal of the appeal.  <u>See</u>

<u>Balaber-Strauss v. Reichard (In re Tampa Chain Co., Inc.)</u>, 835 F.2d 54, 55 (2d Cir. 1987); <u>Adler</u>

<u>v. BankPlus Mortgage Corp.</u>, 108 B.R. 435, 438 (S.D.N.Y. 1989) (dismissal appropriate where

appeal lacked merit and appeared to be "only the latest in a long series of dilatory tactics in both

the state and federal courts."  Whether dismissal is appropriate falls within the discretion of the

district court and will be affirmed unless the court has abused its discretion.  <u>In re Tampa Chain</u>

<u>Co., Inc.</u>, 835 F.2d at 55 (noting bad faith, negligence and indifference are proper bases for a

district court's exercise of its discretion and declining to limit the list to those three bases).

The appeals of these decisions were docketed in the district court on December 3, 2012.

Mr. Dedvukaj never made an application for an extension of time to file briefs, and this Court

did not excuse the filing of briefs or specify a different time limit for filing briefs.  Therefore, Mr. Dedvukaj was required to file his brief by December 17, 2012.  He failed to do so.

Mr. Dedvukaj's procedural default is not excused by his status as a pro se litigant. LoSacco v. City of Middletown, 71 F.3d at 92.  Particularly, where, as here, Mr. Dedvukaj has already demonstrated he understood the need to timely file a brief as evidenced by the pro se brief he filed in support of his appeal of the December 5 Contempt Order (13-cv-235).

Further, it now appears Mr. Dedvukaj intended to retain counsel to represent him in these appeals, and, in fact, came to an agreement with Mr. DiJoseph with respect to that representation, (see Doc. #14, 13-cv-235, DiJoseph Aff. ¶ 2).  However, Mr. DiJoseph has never appeared on his behalf.  Instead, Mr. Dedvukaj has repeatedly filed applications for extensions of this Court's March 8, 2013, deadline for the appearance of counsel on behalf of the debtors because Mr. Dedvukaj needed permission from the bankruptcy court to retain counsel for the debtors.  Mr. Dedvukaj has never argued, nor does the Court believe there is a basis to argue, that he needs permission from the bankruptcy court to retain counsel for himself.  Indeed, there is no explanation in any of Mr. Dedvukaj's applications of why he needs more time to have Mr. DiJoseph appear on his behalf.

In short, there is no explanation for why Mr. Dedvukaj failed to file appeal briefs in three out of the four appeals from the Contempt Orders.  Based on this record, the Court finds either Mr. Dedvukaj was negligent in failing to file briefs in support of his appeals, or the failure is an effort to further delay enforcement of the Confirmation Order.  Either way, the appeals from the August 10 Contempt Order (12-cv-8759) and the Chapter 11 Trustee Order (12-cv-8757) are dismissed.

C.     December 5 Contempt Order (13-cv-235)

The December 5 Contempt Order was entered following Mr. Dedvukaj's actions taken to obtain a second ex parte TRO in state court.  The order held Mr. Dedvukaj in contempt for violating numerous bankruptcy court orders including the Confirmation Order, the August 10 Contempt Order, the September 14 Contempt Order, and the Chapter 11 Trustee Order.  (Doc. #366).  Additionally, Mr. Dedvukaj was ordered to pay actual damages, including reasonable costs, expenses and attorneys' fees incurred by GECMC in relation to the state court TRO proceedings.  (Doc. #366 at ¶ 3).

On appeal, Mr. Dedvukaj does not argue that he did not obtain a second ex parte TRO in state court in violation of the bankruptcy court's orders, or that the bankruptcy court erred in its application of the law in the December 5 Contempt Order.  Rather, Mr. Dedvukaj directs the majority of his arguments towards challenging the validity of the Confirmation Order and other contempt orders he is charged with violating.  Because none of these arguments is properly before the Court on this appeal, they are not grounds for reversing the December 5 Contempt Order.  Even if these arguments are properly before the Court, they all lack merit.

1.     Confirmation Order

Mr. Dedvukaj's arguments with respect to the Confirmation Order are a rehash of the same arguments this Court has already rejected in the direct appeal of the Confirmation and Reconsideration Orders.  The Court will not revisit that ruling here.  Suffice it to say, the Confirmation Order was valid and binding upon debtors and Mr. Dedvukaj.

2.      Injunctions Issued in Other Contempt Orders

As to the other Contempt Orders, which enjoined Mr. Dedvukaj from taking action in violation of the Confirmation Order, Mr. Dedvukaj argues GECMC did not demonstrate that the requirements for obtaining injunctive relief were met.  The Court disagrees.

Ordinarily, "[a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Resources Defense Council, Inc., 129 S.Ct. 365, 374 (2008).  Courts have discretion, however, incident to their inherent power, to impose a variety of sanctions for conduct that abuses the judicial process.  See Chambers v. NASCO, Inc., 501 U.S. 32, 35, 44-45 (1991) (affirming sanction assessing attorney's fees and related expenses for a party's bad-faith conduct); see also Solow v. Kalikow (In re Kalikow), 602 F.3d 82, 96 (2d Cir. 2010) ("The statutory contempt powers given to a bankruptcy court under §105(a) complement the inherent powers of a federal court to enforce its own order.").

Here, the Contempt Orders entered by the bankruptcy court did not enjoin the state court proceedings.  Rather, they enforced the injunction in paragraph 22 of the Confirmation Order, which prohibited debtors and Mr. Dedvukaj from taking actions to interfere with GECMC's implementation of the plan.  The bankruptcy court had the inherent power to enforce its own order.

Even if the Contempt Orders could be construed as issuing new injunctive relief, Mr. Dedvukaj's arguments lack merit.  Here, the debtors were bound to the provisions of the plan. See 11 U.S.C.  § 1141(a); see also 11 U.S.C. § 1142(b) ("The court may direct the debtor and any other necessary party to execute or deliver or to join in the execution or delivery of any

instrument required to effect a transfer of property dealt with by a confirmed plan, and to

perform any other act, including the satisfaction of any lien, that is necessary for the

consummation of the plan.").  Thus, "[e]xercise of the Court's section 105(a) authority [to

enforce or implement its earlier orders and prevent abuses of process], vindicates the interests of

the Court, as much as (and perhaps more than) it vindicates the interest of an individual litigant.

Particularly in such a situation, it is not surprising that the usual grounds for injunctive relief,

such as irreparable injury, need not be shown in a proceeding for an injunction under section

105(a)."  In re Ames Dep't Stores, Inc., 317 B.R. 260, 274 (Bankr. S.D.N.Y. 2004); see also In re

Chateaugay Corp., Reomar, Inc., 93 B.R. 26, 29 (S.D.N.Y. 1988) ("Rather, a bankruptcy court

may enjoin proceedings in other courts when it is satisfied that such a proceeding would defeat

or impair its jurisdiction with respect to a case before it.").

     Here, debtors sought to enjoin the transfer of the Property, the very purpose of the

Chapter 11 plan.  The bankruptcy court's authority to enjoin the debtors from proceeding with

the state court proceedings could not be clearer in these circumstances.  See In re Momentum

Mfg. Corp., 25 F.3d 1132, 1136 (2d Cir. 1994) ("Section 105(a) should be 'construed liberally to

enjoin [actions] that might impede the reorganization process.'") (citations omitted); In re

Adelphia Commc'ns Corp., 345 B.R. 69, 86 (Bankr. S.D.N.Y. 2006) (finding the adverse effects

that would be caused by defendants efforts to enjoin "the very transaction that will provide the

underpinnings of the Debtors' reorganization, and provide the lion's share of creditor

recoveries," was "the poster child for exercise of the Court's section 105(a) power.").

     Finally, contrary to Mr. Dedvukaj's argument that GECMC was unlikely to succeed on

the merits, GECMC did, in fact, succeed on the merits.  The Court also rejects the argument that

GECMC needed to and failed to show that it would be irreparably harmed by requiring it to

proceed in state court, or that the balance of the equities tipped in the debtors' favor.  Last, the

public "has a strong interest in ensuring that the orders of a bankruptcy court (like any other

court) cannot be circumvented."  In re Ames Dep't Stores, Inc., 317 B.R. at 274 n.68.

### 3.     Concurrent Jurisdiction

Mr. Dedvukaj also challenges the Contempt Orders arguing the state court has concurrent

jurisdiction over Chapter 11 enforcement.  Although it may be true that a state court can interpret

and enforce a Chapter 11 plan, In re Sunbrite Cleaners, Inc., 284 B.R. 336, 342 (N.D.N.Y. 2002),

the state court proceedings instigated by Mr. Dedvukaj were not brought to interpret and enforce

the Chapter 11 plan, they were brought to thwart the implementation of the Chapter 11 Plan.

Accordingly, the fact that the state court has concurrent jurisdiction is not a defense to

nor grounds to reverse the bankruptcy court's Contempt Orders, which incidentally enjoined

only the debtors and Mr. Dedvukaj, and not the state court.

### 4.     Good Faith

Last, Mr. Dedvukaj argues that the fact that the state court granted his requested TROs

demonstrates that he acted in good faith and provides cause for reversing the bankruptcy court's

sanctions.  To the extent this argument applies to the December 5 Contempt Order, it is properly

raised on this appeal.  In an abundance of caution, the Court also addresses this argument as to

each Sanctions Order.

A court may hold individuals in civil contempt if "the order violated by the contemnor is

'clear and unambiguous,' the proof of non-compliance is 'clear and convincing,' and the

contemnor was not reasonably diligent in attempting to comply."  See EEOC v. Local 638, 81

F.3d 1162, 1171 (2d Cir. 1996) (quoting United States v. Local 18-04-1, Int'l Longshoremen's

Ass'n, 44 F.3d 1091, 1096 (2d Cir. 1995)); see also In re Chief Executive Officers Clubs, Inc.,
359 B.R. 527, 542 (Bankr. S.D.N.Y. 2007).

The Court has conducted a thorough review of the record on appeal and the bankruptcy
court's decisions and finds this standard was met in each of the Contempt Orders.

With respect to the August 10 Contempt Order, the Court finds (1) Paragraph 22 of the
Confirmation Order was clear and unambiguous in prohibiting Mr. Dedvukaj from taking action
"to interfere with GECMC's . . . implementation or consummation of the Plan," (2) Mr.
Dedvukaj's non-compliance is evident from his affidavits in support of the ex parte application
for the July 13 TRO, and (3) Mr. Dedvukaj was not reasonably diligent in attempting to comply
as evidenced by his running to state court the day after the bankruptcy court denied debtor's
motion for reconsideration of the Confirmation Order to obtain the relief the bankruptcy court
denied (i.e., a stay pending appeal of the Confirmation and Reconsideration Orders).

With respect to the September 14 Contempt Order, the Court finds (1) the Confirmation
Order was clear and unambiguous, as set forth above, and paragraph 2 of the August 10
Contempt Order was clear and unambiguous in directing debtors to "take any and all actions
necessary to (i) have the TRO vacated as expeditiously as possible . . . and (ii) cease prosecution
and otherwise withdraw and discontinue pursuit of the Debtors' request in state court for a
preliminary injunction with respect to the recordation of the Deed," (2) Mr. Dedvukaj's non-
compliance is evident from his replacing debtors' state court counsel in order to continue the
state court TRO proceedings with new counsel, and (3) Mr. Dedvukaj was not reasonably
diligent in attempting to comply with either of these orders as evidenced by his hiring new
counsel expressly for the purpose of disobeying the August 10 Contempt Order.  These same
findings apply to the issuance of the Chapter 11 Trustee Order.

Last, with respect to the December 5 Contempt Order, the Court finds (1) the Confirmation Order and August 10 Contempt Order were clear and unambiguous as set forth above, the Chapter 11 Trustee Order was clear and unambiguous in directing the appointment of a trustee and directing that the debtors and "Victor Dedvukaj, shall have no authority or right to take any action on behalf of, or represent the interests of, either of the Debtors or their respective estates, having been relieved of such authority and right under 11 U.S.C. § 1104(a)," (2) Mr. Dedvukaj's non-compliance is evident from his application for the October 16 TRO,[9] and (3) Mr. Dedvukaj was not reasonably diligent in attempting to comply with any of these orders as evidenced by his repeated willful actions taken in contravention of the bankruptcy court's orders. The Court agrees with GECMC that Mr. Dedvukaj was given repeated opportunities to voluntarily come into compliance with the bankruptcy court's orders but chose not to.

The fact that the state court granted Mr. Dedvukaj's requested TROs indicates only that the state court believes there is some merit to his position. It does not, however, demonstrate that he acted in good faith, or provide cause for reversing the bankruptcy court's orders.

### 5.   Conclusion

Having thoroughly reviewed the record on appeal and the bankruptcy court's decisions, the Court concludes that the December 5 Contempt Order was properly entered and affirms the decision of the bankruptcy court.

---

[9]   Mr. Dedvukaj argues that he should not be sanctioned because Justice Lewis issued the TRO sua sponte. Even if the state court ultimately made a ruling sua sponte the record reflects that Mr. Dedvukaj submitted affidavits in support of the application in contravention of the bankruptcy court's clear and unambiguous orders. Accordingly, the Court rejects this argument.

**CONCLUSION**

The bankruptcy court's June 19, 2012, Confirmation Order and July 16, 2012, Reconsideration Order are AFFIRMED.

GECMC's motions to dismiss the August 10 Contempt Order, September 14 Contempt Order, and Chapter 11 Trustee Order are GRANTED with prejudice.

GECMC's motion to dismiss the December 5 Contempt Order is GRANTED with prejudice as to the debtors and individuals Violeta Dedvukaj, Marash Dedvukaj, Gjelosh Dedvukaj, and Maruka Dedvukaj, and DENIED as to Victor Dedvukaj.

Upon consideration of the merits of Mr. Dedvukaj's appeal from the December 5 Contempt Order, the Court AFFIRMS the decision of the bankruptcy court.

The Clerk is instructed to terminate these appeals and close these cases.

Dated: April 26, 2013
   White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge